Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | William J. Hibbler | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 3889 | **DATE** | 7/29/2002 |
| **CASE TITLE** | Peterson v. Draper & Kramer Mortgage, etal. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendant's Motion for Summary Judgment (#14-1)

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____ . Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing [held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference [held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial [set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs [by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the attached reasons, Defendant's Motion for Summary Judgment is **GRANTED**. All pending motions and dates are terminated as moot. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | AUG 0 1 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 30 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | AUG 0 1 2002 | |
| | courtroom deputy's initials | U.S. DISTRICT COURT  Date/time received in central Clerk's Office | date mailed notice  mailing deputy initials | |

LINDA PETERSON )
    Plaintiff )
)  NO. 00 C 3889
v. )
)  JUDGE WILLIAM J. HIBBLER
DRAPER AND KRAMER MORTGAGE CORP. )
 and ROBERT L. SHIELD )
    Defendants )

## MEMORANDUM OPINION AND ORDER

The Court has before it Defendants' Robert L. Shield ("Shield") and Draper & Kramer Mortgage Corporation ("DKMC") Motion for Summary Judgment. Linda Peterson ("Plaintiff") contends Defendant Shield engaged in a continuing course of conduct that constituted sexual harassment and violated Title VII, 42 U.S.C. § 2000e-5(f)(3). Plaintiff claims Shield's conduct was unwelcomed and, but for her sex, Plaintiff would not have been the object of harassment that created an intimidating, hostile, and offensive work environment, and thus unreasonably interfered with her work performance. Furthermore, Plaintiff alleges Defendant DKMC witnessed Defendant Shield's conduct, failed to address the situation, and appeared to condone the conduct. Finally, Plaintiff alleges both Defendants' conduct also constituted an Intentional Infliction of Emotional Distress ("IIED").

1

Defendants' motion to dismiss Count I (Title VII sexual harassment claim) against Defendant Shield and Count II (IIED claim) against both Defendants were denied by this Court. Defendants now move the Court to grant summary judgment in their favor with respect to Count I, because the claims are time-barred, the evidence of the alleged sexual misconduct does not establish severe or pervasive misconduct, and Shield cannot be sued in his official capacity. Defendants' also move the Court to grant summary judgment in their favor with respect to Count II, because Plaintiff's IIED claim is preempted by Plaintiff's Title VII claim. For the following reasons, Defendants' Motion for Summary Judgment with respect to both counts is GRANTED.

## Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Cox v. Acme Health Serv., Inc.*, 55 F.3d 1304, 1308 (7th Cir. 1995). The moving party bears the initial burden of establishing there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

(1986). If the movant satisfies this burden then the nonmovant must go beyond the pleadings and set forth specific facts for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). However, self-serving assertions, without factual support in the record, are insufficient to defeat a summary judgment motion. *James v. Sheahan*, 137 F.3d 1003, 1006 (7th Cir. 1998).

**Background**

Plaintiff, a female, worked as Vice President of Operations for Defendant DKMC from April 1996 to February 2000. As Vice President of Operations, Plaintiff was responsible for the backroom operation, which entailed processing all loans and ensuring the loans complied with governmental, institutional, bank and lending institutional guidelines. Defendant Shield is a Senior Vice President at DKMC. During her tenure at DKMC, Plaintiff reported directly to Shield. Shield reported directly to Forrest Bailey ("Bailey"), who became the President and Chief Executive Officer of DKMC in June 1998.

On one occasion in May 1998, while in Plaintiff's office and while looking at a picture of Plaintiff's daughter, Shield commented her daughter's "lights were on" (referring to the daughter's breasts). Shield never made

3

the comment again and Plaintiff did not report this statement to anyone. On four separate occasions between May 1998 and May 1999, while in Plaintiff's office, Shield took the same picture, rubbed it across the front of his pants, and said to Plaintiff, "you know she [referring to the daughter] wants me." On the first occasion, according to Plaintiff, she requested Shield to put the picture down and reminded Shield the picture was of her daughter. On the second occasion, Plaintiff said to Shield, "You have no idea what you are talking about; she is so far out of your league; put the picture down." Plaintiff said nothing to Shield on the third and fourth occasions.

On two occasions, one in September 1999 and one in October 1999, Plaintiff was present when Shield made a comment regarding a woman "being oiled" (apparently wanting to see the woman in a bathing suit and suntan lotion). In September 1999, a group of employees, including Shield and Plaintiff, were standing in a hallway at DKMC. A woman walked past the group and Shield repeated a comment to another male employee standing there suggesting a third man would like to see the woman "oiled." In October 1999, while at a mortgage bankers convention, Plaintiff overheard Shield make a similar comment to another man about a third man

4

wanting to see a woman "oiled." At the time, Plaintiff was standing away from the group and the comment was not directed towards her.

Also, on several isolated social occasion in 1998 and 1999, Shield made numerous comments or jokes referencing "blow jobs" to a group of employees of which Plaintiff was a member. Plaintiff agrees the jokes were not directed towards her, nor was she the subject of the jokes. On one occasion, in October 1999, Shield, while imitating the cartoon character Donald Duck, asked a co-worker if his wife ever gave him "blow jobs." Plaintiff never reported these incidents to Human Resources.

In addition to his vulgar jokes and comments, on seven different occasions between June 1999 and December 1999, Shield raised his voice at Plaintiff. Specifically, on November 1999, in response to a problem with on of DKMC's clients, Shield screamed and cursed at Plaintiff that the backroom (the area for which Plaintiff was responsible) was "fucked up." At the time, Plaintiff was responsible for a two million dollar error relating to DKMC's aged loans and credit lines. Apparently, this and other problems were attributed to Plaintiff's processing errors. In addition, Shield yelled at other employees and not solely at

5

Plaintiff.

In April 1999, Amy Michilak ("Michilak"), a mortgage insurance salesperson and non-DKMC employee, was introduced to Plaintiff's daughter and son-in-law while on business in London. Plaintiff's daughter revealed intimate details about her relationship with her husband to Michilak. Michilak repeated these details to Shield. Shield, in turn, told Plaintiff what Michilak had told him. Shield and Michilak allegedly made a reference to black leather which Plaintiff believed was a reference to the story. Plaintiff did not report this to anyone at DKMC.

In February 2000, Shield asked Plaintiff if he knew whether or not Fred Mrozek, a DKMC employee, was looking for a new position with a different mortgage company. Plaintiff initially denied such knowledge. Shields then informed Plaintiff he was aware she was privy to that information and was very upset with her.

Plaintiff contends all of the above occurred because of her sex and were sexual harassment. At no time during or after her employment with DKMC did Peterson seek professional medical help or other psychological assistance as a result of any of these encounters with Shield.

**ANALYSIS**

Title VII establishes it is unlawful employment practice for an employer "to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. §§ 2000e-2(a)(1); *Hall v. Bodine Elec. Co.*, 276 F.3d 345, 352 (7th Cir. Jan. 8, 2002).

### Continuing Violation Theory

The Statute of Limitations for filing a discrimination with the Equal Employment Opportunity Commission ("EEOC") is 300 days in Illinois. *See* U.S.C. 2000e-5(e); *Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 244 (7th Cir. 1999). If the plaintiff does not file a charge within 300 days of the alleged discriminatory conduct, then the charge is time-barred. *Hardin*, 167 F.3d at 344. Plaintiff filed her lawsuit on May 1, 2000; accordingly, any discriminatory acts occurring before July 6, 1999 are outside the limitations period covered by the charge unless the continuing violation doctrine applies. *See Hall*, 276 F.3d at 353. The continuing violation doctrine allows a plaintiff to get relief for time-barred actions by linking them to acts occurring within the limitations period. *See id.*

7

Any actions which Plaintiff alleges occurred between the dates of June 6, 1999 and May 1, 2000 are clearly included in the 300 day time period and should be analyzed as a Title VII claim. However, any actions prior to June 6, 1999, will only be included if there is a continuing violation. These acts include the May 1998 "lights on" comment, the four picture incidents that Plaintiff says occurred between May 1998 and May 1999 and any comments or jokes about "blow jobs" made prior to June 6, 1999.

The U.S. Supreme Court's recent decision in *National R.R. Passenger Corp. v. Morgan*, is on point with regards to the established Seventh Circuit's approach to determine whether or not the continuing violation doctrine applies. 122 S.Ct. 2061 (June 10, 2002). This decision appears to overturn the Seventh Circuit's traditional test from *Galloway v. General Motors Service Parts Operations*, 78 F.3d 1164 (7th Cir. 1996). In *Galloway*, the Seventh Circuit stated

> the plaintiff may not base her [] suit on conduct
> that occurred outside the statute of limitations
> unless it would have been unreasonable to expect
> the plaintiff to sue before the statute ran on
> that conduct, as in a case in which the conduct
> could constitute, or be recognized, as actionable
> harassment only in the light of events that
> occurred later, within the period of the statute
> of limitations.

8

*Id.* at 1167.

In *Morgan*, the Court stated a more inclusive view of the continuing violation doctrine.

> It is precisely because the entire hostile work environment encompasses a single unlawful employment practice that we do not hold, as have some of the Circuits, that the plaintiff may not base a suit on individual acts that occurred outside the statute of limitations unless it would have been unreasonable to expect the plaintiff to sue before the statute ran on such conduct. The statute does not separate individual acts that are part of the hostile environment claim from the whole for the purposes of timely filing and liability.

*Morgan*, 122 S.Ct. at 2075. Under the new permissive standard set by the Supreme Court, time does not begin to run, as it traditionally has, once the plaintiff has a subjective awareness she is being discriminated against. *Morgan*, 122 S.Ct. at 2074-75. Rather, "in order for the charge to be timely, the employee need only file the charge within the 180 or 300 days of any act that is part of the hostile work environment." *Id.* at 2075. Accordingly, because Plaintiff filed her claim within 300 days of "any act" that creates her claim, the continuing violation doctrine applies and this court will look at all actions that the plaintiff alleges in her Title VII claim. *Id.*

### Severe or Pervasive

"Sexual harassment which is so 'severe or pervasive' as to 'alter the conditions of the victim's employment and creates an abusive working environment' violates Title VII." *Parkins v. Civil Constructors of Illinois, Inc.*, 163 F.3d 1027, 1032 (7th Cir. 1998) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 786 (1998)) (internal citations and quotations omitted). "'Whether the harassment rises to this level turns on a constellation of factors that include 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Hostetler v. Quality Dining, Inc.*, 218 F.3d 798, 806-807 (7th Cir. 2000) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). This Court must also assess the subjective and objective impact of the harassment on Plaintiff's work environment. *Id.* at 807. "The work environment cannot be described as 'hostile' for purposes of Title VII unless a reasonable person would find it offensive and the plaintiff actually perceived it as such." *Id.* (citing *Faragher*, 524 U.S. at 788). "[T]he objective severity of the harassment should be judged from the perspective of a reasonable person

10

in the plaintiff's position, considering 'all the circumstances.'" *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998) (quoting *Harris,* 510 U.S. at 23).

Plaintiff argues harassment is evident in Shield's "lights on" comment to Plaintiff, Shield rubbing a picture of Plaintiff's daughter in front of his crotch four times, Shield's comments about "blow jobs", the two "woman being oiled" comments, Shield yelling at Plaintiff, and the comment concerning "black leather" and Michilak. Although this behavior is not commendable and may be offensive, it is not actionable misconduct in violation of Title VII; none of the incidents individually rise to the level of severe or pervasive. Furthermore, taken as a whole continuous pattern of behavior, Plaintiff still fails to demonstrate Shield's behavior was severe and pervasive. Much of the challenged behavior was not directed at Plaintiff and could, at most, be construed as "second hand harassment." *See Flynn v. Mid-States Screw Corp.*, No. 99 C 50258, 2001 WL 789411 (N.D. Ill. Jul. 11, 2001). The facts do not indicate Plaintiff was harassed on a daily basis, unlike what was seen in *Dey v. Colt Constr. and Dev. Co.*, 28 F.3d 1446 (7th Cir. 1994), or *Flom v. Waste Management*, No. 95 C 1924, 1997 WL 137174 (N.D. Ill. Mar. 24, 1997).

As for Shield yelling at Plaintiff, "Title VII's focus of sexually discriminating conduct does not operate as a general ban on yelling, swearing, screaming or other rude or offensive behavior." *Paap v. Wall Dara, Inc.*, 934 F. Supp. 969, 977 (N.D. Ill. 1996) (citing *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1415 (10th Cir. 1987)). Shield was an equal opportunity yeller. Plaintiff's testimony establishes Shield did not yell only at her, but also male employees. Accordingly, while his conduct was insensitive and rude, Shield did not violate Title VII.

### Shield in his Official Capacity

For the Court to find Shield acted in his official capacity, the evidence must show Shield's actions were part of his job duties or at the very least were of the benefit to the employer. *See generally Comito v. Crowe, et al.*, No. 98 C 1250, 1999 WL 168464 (N.D. Ill. Mar. 18, 1999)(in Section 1983 cases, individuals are only liable in their official capacity where their actions further an official policy or practice or custom of the employer). Here, Plaintiff has failed to allege in her Complaint or develop any evidence that supports a claim Shield acted as a DKMC official when he allegedly sexually harassed her. Moreover, Plaintiff has not alleged or established that Shield's

12

actions were within his job description, nor has Plaintiff set forth evidence Shield's actions furthered a DKMC policy or practice. Furthermore, the allegations of Shield's sexual harassment, as a matter of law, are outside the scope of his employment. *See Dockter v. Rudolf Wolf Future, Inc.*, 684 F. Supp 532, 535 (N.D. Ill. 1998); *Dorsey v. Givens*, No. 99 C 7933, 2001 WL 1117268 (N.D. Ill. Sept. 20, 2001); *Luttrell, et al. v. O'Connor Chevrolet, Inc.*, No. 01 C 979, 2001 WL 1105125 at *4 (N.D. Ill. Sept. 19, 2001). Accordingly, Shield cannot be sued in his official capacity.

### IIED Claim is Preempted

Both Illinois courts and courts in this circuit are clear that IIED claims are preempted by the Illinois Human Rights Act ("IHRA") if the facts giving rise to the IIED claim are "inextricably linked" to facts giving rise to a cause of action under the IHRA. *See Cole v. Chicago Tribune Co.*, No. 96 C 3320, 2000 WL 656644 (N.D. Ill. May 23, 2000); *Schumacher v. J.P Morgan & Co.*, No. 98 C 108, 1999 WL 58554 (N.D. Ill. Feb. 3, 1999); *EEOC v. Foster Wheeler Constructors, et al.*, No. 98 C 1901, 1998 WL 850810 (N.D. Ill. Dec. 2, 1998). "Numerous courts in this district have 'routinely dismissed Illinois state tort claims – particularly IIED claims – for lack of jurisdiction when

13

brought in connection with allegations of civil rights violations.'" *Ratley v. City of Aurora*, No. 97 C 3422, 1998 WL 30697, at *3 (N.D. Ill. Jan. 22, 1998)(quoting *Daula v. Commonwealth Edison*, 938 F. Supp. 1388, 1404 (N.D. Ill. 1996); *see also Garcia v. Fry*, 972 F. Supp. 1133, 1140 (N.D. Ill. 1997); *Valido v. Damsung Heavy Indus. Co.*, No. 96 C 4699, 1997 WL 85154, at *4-5 (N.D. Ill. Feb. 21, 1997); *Hanningan-Hass v. Bankers Life & Cas. Co.*, No. 95 C 7408, 1996 WL 139402, at *3 (N.D. Ill. Mar. 26, 1996).

This case is similar to *Ratley*, where an IIED claim was alleged using the same facts as the plaintiff's civil rights claim. 1998 WL 30697. In *Ratley*, the court looked to the Illinois Supreme Court's decisions in *Geise v. Phoenix Co. v. Chicago*, 639 N.E.2d 1273 (Ill. 1994), and *Maksimovic v. Tsogalis*, 687 N.E.2d 21 (Ill. 1997), to determine whether the civil rights claim preempted the plaintiff's IIED claim under the IHRA. *Ratley*, 1998 WL 30697, at *3-4. The court found a circuit court's jurisdiction over a state tort claim "depends upon whether the tort claim is inextricably linked to a civil right violation such that there is no independent basis for the action apart form the act itself." *Id.* at *4 (quoting *Maksimovic*, 687 N.E.2d at 23).

In this case, as in *Ratley*, the allegations that

14

comprise Plaintiff's claim for IIED are based solely on her claims of sexual harassment.  Additionally, Plaintiff's answers to Defendant's Interrogatory Number Five and Plaintiff's deposition make it clear the allegations for IIED are based solely on her claim for sexual harassment. Thus, Plaintiff's allegations of sexual harassment rely on the same facts for her IIED claim.  Accordingly, this Court finds Plaintiff's IIED claim is "inextricably linked" to her Title VII claim and is preempted by the IHRA and the principles set forth by the Illinois Supreme Court in *Geise* and *Maksimovic*.

## CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment for Count I and Count II is **GRANTED**.

**IT IS SO ORDERED.**
**DATE**: July 29, 2002

_____
Hon. William J. Hibbler
**United States District Court Judge**